JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

STACEY P. GEIS (CABN 181444)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7126
Facsimile:  (415) 436-7234
E-Mail: Stacey.Geis@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COLEMAN LAU, ) <br> ) <br> Defendant. ) <br> ) | No.  CR 07-0482 VRW <br><br> GOVERNMENT'S SENTENCING MEMORANDUM <br><br> Hearing Date:  Feb. 21, 2008 <br> Time:        1:30 p.m. <br> Court:       Hon. V. Walker |

I.  INTRODUCTION

   The defendant Coleman Lau ("Lau") is scheduled to be sentenced before this Honorable Court on February 21, 2008.  Lau entered a plea of guilty on November 29, 2007 to one count of smuggling, Title 18 U.S.C. § 545, and one count of making a false statement, Title 18 U.S.C. § 1001.  The United States files this pleading to address the offense conduct, the Guidelines calculations, as well as to advise the Court of its sentencing recommendation of two months imprisonment, three years probation, and a fine of $2,000.

///

///

II. DISCUSSION

A. <u>Offense Conduct</u>

In the presentence report ("PSR"), the Probation Officer provides an accurate description of the offense conduct in this case. In brief, on March 2, 2004, Customs officials at San Francisco Airport caught Lau smuggling into the country fourteen (14), live, juvenile Fly River turtles, all in violation of Title 18 U.S.C. § 545. Fly river turtles are a protected species, native to Indonesia, Papa New Guinea, and Australia.[1] Lau did not have the necessary permits to import the turtles, nor did he declare the turtles to Customs, or ensure the turtles were properly quarantined for health and safety concerns, given they are common carriers of salmonella. Not only did Lau fail to declare the turtles to Customs, Lau falsified the customs declaration by stating that he was not bringing any live wildlife into the United States, whether a protected species or not.

B. <u>Guidelines Calculation</u>

In this case, the United States generally concurs with the PSR's calculation of the Sentencing Guidelines. The base offense level is 6. <u>See</u> U.S.S.G. § 2Q2.1(a). There is a two-level increase for commercial gain. *See* U.S.S.G. § 2Q2.1(b)(1). There is a two-level increase for not quarantining the smuggled species. *See* U.S.S.G. § 2Q2.1(b)(2)(A). There is also a two-level increase for the value of the turtles exceeding $5,000. *See* U.S.S.G. § 2Q2.1(b)(3)(A)(ii) (following U.S.S.G. § 2B1.1(b)(1)(B)). There are no other enhancements that apply. Thus, the adjusted offense level is 12. Where the government somewhat parts ways with Probation is the two-level decrease for acceptance of responsibility. Probation has calculated the two-level reduction based on Lau's decision

---

[1] Fly River turtles are fresh-water turtles and biologically unique because they are one of the only fresh-water turtles to have fins similar to salt-water sea turtles. Here, Lau smuggled in the baby turtles by stacking them on top of each other in two groups of seven, and then holding them together with thick rubber bands. It is surprising the turtles survived the flight, given that the shells of juvenile Fly River turtles are soft and thus prone to breaking. That said, 13 of the 14 turtles lived and were safely transported to various zoos and research institutions. *See* Declaration of Kenneth McCloud, at ¶ 6, attached hereto.

GOVERNMENT'S SENTENCING
MEMORANDUM [CR 07-0482 VRW]          -2-

to plead guilty in this matter. As noted, Lau pled guilty in open court to a smuggling charge and a false statement charge. There is a strong argument, however, that Lau is not entitled to the two-level reduction given he appears to be falsely denying or frivolously contesting all of the relevant conduct. *See* U.S.S.G. § 3E1.1 (finding a defendant who falsely denies, or frivolously contests, relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility.) Lau refuses to admit that the turtles were smuggled in for commercial gain, or that the turtles were a protected species at the time of the offense, or that the value of the turtles was at least $500/turtle. All of these issues go to the heart of this case. This case is about wildlife trafficking. Lau smuggled in fourteen protected turtles for purposes of selling them, most likely at the aquarium store he manages, which sells reptiles. To deny all of this relevant conduct is to deny the gravamen of the offense – that he smuggled in protected wildlife for commercial purposes – and makes his acceptance appear superficial and disingenuous. In addition, Lau made a false statement to federal agents when he was interviewed by failing to disclose that he was the owner and manager of a commercial aquarium that sells reptiles, and then preparing a written statement stating the he smuggled in the turtles as pets, and not for commercial purposes, despite all evidence to the contrary. These false statements also show a lack of acceptance for his actions.

While the government believes the Court could find that the two-level reduction does not apply in this case, the government also accepts that Lau pled guilty to a smuggling charge and a false statement charge and provided a factual basis during the entry of plea. Thus, the government is willing to accept Probations' guidelines calculation and instead request that the Court factor in the above information when determining an appropriate sentence, which the government believes is some amount of jail time.

With a two-level departure for acceptance of responsibility, the final total offense level is 10. Because Lau has a Criminal History Category of I, the applicable Guidelines range is 6-12 months in Zone B.

Despite his alleged acceptance of responsibility for his actions, as noted above, Lau challenges every enhancement that clearly applies to his offense. The government wishes to address each of the objections Lau raised to the PSR.

1. <u>Two-Level Enhancement Because the Turtles Were Smuggled into the United States for Commercial Gain</u>

Lau challenges that the fourteen turtles were smuggled into the United States for commercial gain. Lau states instead that he smuggled in fourteen live turtles in order to keep them as pets. This objection is without merit. First, Lau did not smuggle in one or two turtles, or even three or four turtles, where maybe one could conclude they were smuggled in to be used as pets only. Lau smuggled in *fourteen* turtles. And, these turtles grow to be approximately two feet in length. Lau lives with his parents in a small, three bedroom house. One has to wonder where he would keep fourteen turtles as live pets that would each grow to be two feet long. Second, and of even greater import, Lau is an owner and manager of a commercial aquarium store, a store whose sole purpose is sell wildlife, including reptiles – a salient fact he failed to disclose to Fish & Wildlife agents when they interviewed him. The smuggled turtles had a market value of at least $500 per turtle back in 2004. Thus, Lau was carrying $7,000 of wildlife contraband on that flight from Hong Kong. It is unquestionable that Lau's purpose for smuggling in this large a quantity of protected and expensive turtles was for commercial purposes.

2. <u>Two-Level Enhancement for Failure to Quarantine the Turtles</u>

Lau objects to a two-level enhancement for failure to quarantine, stating that some of the turtles were greater than four inches in carapace length, thus, did not have to be quarantined. First of all, the regulations are clear that no one is allowed to import into the United States live turtles with carapace lengths of less than four inches. *See* 42 C.F.R. § 71.52. The rationale for the rule is clear: turtles are often carriers of *Salmonella* and *Arizona* bacteria, which can produce potentially serious disease in humans that require hospitalization, especially in children. *See also* 37 Fed. Reg. at 24671 (1972) (noting that there are an estimated 280,000 turtle-associated cases of *Salmonellosis* yearly, primarily

1   in children). Lau seems to suggest that this enhancement should not apply because not all
2   of the 14 turtles were less than 4 inches in carapace length. This claim is frivolous. As
3   the Court can see from the photos attached to Kenneth McCloud's declaration, all of the
4   smuggled turtles were less than four inches in length.

5       3.    Two-Level Enhancement for Market Value of Turtles Exceeding $5,000.

6   Lau also challenges the two-level enhancement for the market value of the turtles
7   exceeding $5,000. Lau asserts the turtles were not valued at $500 each in 2004. The only
8   proof Lau provides for this assertion is a couple of random, Internet chat rooms that
9   advertised the sale of the turtles for $250, $200, and $175. Lau also argues that the turtles
10  did not enjoy protected status in 2004 when the smuggling occurred. Both contentions
11  lack merit.

12  First, as seen in the Declaration of Ken McCloud, a special agent with the United
13  States Fish & Wildlife Services, and one of the agency's renowned experts on reptiles, the
14  value of the Fly River turtle back in 2004 was at least $500. *See* McCloud Declaration at
15  ¶3. This estimate is conservative, given that one of the factors Agent McLoud relies on is
16  a comprehensive study undertaken by a Fish & Wildlife expert in 2001, and attached to
17  the McCloud Declaration. This study determined the market value of numerous reptiles,
18  including the Fly River turtle. The study determined that the value of the Fly River turtle
19  in 2001 was $700 each. The methodology for this study included the review of hundreds
20  of reptile dealer price lists going back 20 years in some cases, as well as interviews with
21  zoo herpetologists and reptile dealers familiar with the species in question. Agent
22  McCloud also relied on his own review of hundreds of price lists and computer searches
23  to determine the value of the turtles in 2004 was at least $500 each. He also conducted
24  some recent Internet enquiries and found Fly River turtles selling for $1,750 and $1,600
25  respectively. *See* McCloud Decl. at ¶3(c).

26  Second, Lau is wrong when he asserts that the Fly River turtle enjoyed no
27  protection in 2004. As noted in the McCloud Declaration, the Fly River turtle is a
28  monotypic genus that is only indigenous to Indonesia, Papua New Guinea and a very

GOVERNMENT'S SENTENCING
MEMORANDUM [CR 07-0482 VRW]           -5-

1  small population in Australia.  The Fly River turtle has been fully protected and
2  prohibited from export from Indonesia, Papua New Guinea and Australia for at least the
3  past twenty years.  *Id.* at ¶2.  In 2005, the Fly River turtle was given international
4  protection as well, when it was listed in the Convention on International Trade in
5  Endangered Species of Wild Fauna and Flora, 50 Code of Regulations, Part 2.  *Id.*  That
6  international protection, however, only supplemented the national protection these turtles
7  received from their native countries, where their export has been banned for years.
8     C.  Government's Sentencing Recommendation
9        The government recommends that Lau be sentenced to two months of
10 imprisonment, followed by three years of supervised release.  The government concurs
11 with Probation's recommendation that Lau be fined $2,000.   The government believes
12 that some term of imprisonment in this case is necessary in order to best serve the goals of
13 Section 3553 of the Sentencing Reform Act.  While the government recognizes that Lau
14 does not have a criminal record since becoming an adult, and is currently employed, these
15 mitigating factors do not outweigh the seriousness of the offense, the need to promote
16 respect for the law, and the need to provide just punishment for the offense committed.
17 18 U.S.C. § 3553.   The Probation Officer is recommending six months of home
18 confinement.  For reasons stated below, the government believes two months of
19 imprisonment is warranted, provides just punishment, ensures consistent and uniform
20 enforcement, and affords adequate deterrence.
21        Smuggling protected and endangered species into the United States for commercial
22 gain is a serious offense.  As Probation aptly pointed out, wildlife trafficking "today is
23 second only to drug smuggling as a major international illegal business."  PSR at 2.  "The
24 demand for such pets has created a worldwide illegal trade in endangered animals now
25 worth an estimated $10 billion per year."  *Id.*  This black market trade has had the
26 insidious effect of increasing demand and increasing supply, especially in developing
27 countries where there is poverty or high unemployment.  People poach protected and
28 endangered species with abandon given the high price tag for their kills.  Indonesia alone,

which is home to Fly River turtles, makes up 10% of the world's tortoise and freshwater turtle species. The extent of wildlife trafficking is having a devastating effect on the existence of hundreds, if not thousands, of protected species, which ultimately affects biodiversity conservation in general. Lau was a direct participant in this illegal trade. He stood to profit from it. He needs to be sent a message. Moreover, there is a large, underground community of smugglers here in the Bay Area. *See* McCloud Decl. ¶4. A message also needs to be sent to this community that there are real consequences to trafficking in protected or endangered species, including the loss of personal liberty.

Some term of imprisonment would also ensure uniformity of sentences for wildlife trafficking. *See* § 3553(a)(6) (need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct). It is common to sentence wildlife traffickers to some term of imprisonment, including cases handled in the Ninth Circuit and here in the Northern District of California. *See United States v. Beau Lewis,* NDCA 2001 (sentenced to 27 months imprisonment for smuggling in and selling various species of reptiles); *United States v. Anson Wong*, NDCA 2001 (sentenced to 71 months imprisonment and $60,000 fine for smuggling and sale of various species); *see also United States v. Paluch*, 84 Fed. Appx. 740 (9th Cir. 2003) (sentenced to 24 months for smuggling and sale of various species of reptiles).[2] The government is not saying that Lau should receive a sentence at the high end of the

---

[2] Indeed, it is not uncommon to see significant jail sentences for wildlife traffickers. *See, e.g.*, *United States v. Kloe et al.*, No. 96-131-CR-ORL-22 (M.D. Fla., Jan. 10, 1997) (defendant sentenced to 46 months imprisonment and fined $10,000 for his illegal import of Malagasy reptiles); *United States v. Silva,* 122 F.3d 412 (7th Cir. 1997) (defendant sentenced to 82 months imprisonment and fined $100,000 for smuggling in exotic birds); *United States v. Maldonado,* No. 93-CR-56 (W.D. Tex.) (defendant sentenced to 60 months imprisonment and fined $10,000 for smuggling exotic birds); *United States v. Freeman*, 77 F.3d 812 (5th Cir. 1996) (defendant sentenced to 27 months imprisonment and fined $15,000 for smuggling exotic birds); *United States v. Wegner et al.*, No. CR-94-278-KN (C.D. Cal. Dec 12, 1995), *aff'd*, 117 F.3d 1426 (Table), 1997 WL 367901 (9th Cir. 1997) (defendant sentenced to 60 months for conspiracy and tax violations, after failing to report accurately illegal gains from the sale of smuggled cockatoos); *United States v. Lee*, 937 F.2d 1388 (9th Cir. 1991) (ring leader sentenced to 70 months imprisonment for smuggling 500 metric tons of salmon into the U.S).

GOVERNMENT'S SENTENCING
MEMORANDUM [CR 07-0482 VRW]            -7-

applicable guideline range, which here would be 12 months, or even the low end of the range, which is 6 months.  The government is recommending a two-month term of imprisonment.  Probation's recommendation of six months of home confinement, where Lau will serve all of his sentence in the comfort of his own home, with all the attending amenities, including employment, does not adequately promote respect for the law, or provide a just punishment.  18 U.S.C. § 3553(a)(2)(A).  It also presents a sentencing disparity, given that wildlife traffickers typically receive some jail time.  *See e.g. United States v. Leong Tian Kum,* EDWI, 2004 (sentenced to 41 months imprisonment for smuggling reptiles); *United States v. Reid Turowski,* EDWI, 2004 (sentenced to 10 months imprisonment for trafficking reptiles); *United States v. Lawrence Wee Soon* Chye, SDFL, 2003 (sentenced to 37 months imprisonment for smuggling reptiles); *United States v. Mikahil Kovtun*, SDFL, 2003 (sentenced to 30 months for smuggling caviar)*; United States v. Donald Hamper*, SDOH, 2005 (sentenced to 12 months imprisonment for selling reptiles interstate).  To only sentence Lau to straight probation would be a deviation from other similar wildlife trafficking cases where jail time was imposed.

Probation notes that it is recommending straight probation in part so that Lau can continue with his current employment at the aquarium store.  To say, however, that Lau should not have to serve any jail time so that he can continue his employment is unjustified when you realize that it is this very employment that enabled Lau to commit the crime in the first instance, and would have likely facilitated the completion of the crime if he had not been caught.  He is the owner and manager of a commercial aquarium store that sells reptiles.  He was likely using this business to promote the black market trade of Fly River turtles and/or other protected species.  Lau should not be rewarded by now using that same employment to get out of any term of imprisonment.

The government recognizes and appreciates the mitigating factors present in this case.  Lau has no criminal record.  Lau has gainful employment.  These mitigating factors, however, do not minimize the seriousness of the offense, the need to ensure just and uniform punishment, and the need for deterrence, both individually and for the

1  smuggling community here in the Bay Area.  Lau was a direct participant in what has
2  become a multi-billion dollar illegal trade that is devastating populations of endangered
3  and protected species throughout the world.  He sought to profit from this illegal trade.
4  He should be punished accordingly.
5       For all of the foregoing reasons, the government recommends a sentence of two
6  months imprisonment, three years of supervised release, and a $2,000 fine.

9  DATED: February 14, 2008             /S/ Stacey P. Geis
                                        STACEY P. GEIS
10                                      Assistant U.S. Attorney